UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TORI WOODS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:11-CV-779-B |
| | § | |
| LANCASTER INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Lancaster Independent School District's Motion to Dismiss Pursuant to Rule 12(b)(6) (doc. 6), filed May 3, 2011. Having considered the Motion, the Court is of the opinion that it should be and hereby is **GRANTED in part** and **DENIED in part** as follows.

I.

BACKGROUND[1]

This action arises out of Plaintiff Tori Woods' employment as a teacher with Defendant Lancaster Independent School District ("LISD"). (*See generally* Pl.'s Compl.). Woods alleges that while working at LISD she was repeatedly harassed by a co-worker, and that she was eventually terminated based on her sex. (*Id.* at 5). She also alleges LISD retaliated against her for filing a complaint with the Equal Employment Opportunity Commission ("EEOC"). (*Id.*).

---

[1]The Court takes its factual account from those uncontested facts found in the parties' pleadings and papers filed with the Court. Any contested fact is designated as the allegation of a specific party.

Woods was employed as a teacher under a probationary contract at LISD for the 2009-2010 school year. (Def.'s Mot. Dismiss 1). On March 5, 2010, LISD informed Woods that her contract was being recommended for non-renewal and that she had the option to resign. (Pl.'s Compl. Ex. 1).[2] Woods handed in her notice of resignation, which LISD approved on April 6, 2010 to become effective on June 9, 2010. (Pl.'s Compl. 2).

On April 29, 2010, LISD interviewed Woods about an alleged inappropriate relationship she had with a student. (Pl.'s Compl. Ex. 6). At the interview, Woods admitted to communicating with the student outside of school, but claimed she had not contacted the student in months. (*Id.*). Following the meeting, LISD placed Woods on paid administrative leave pending a full investigation. (Pl.'s Compl. Ex. 5). On June 3, 2010, a memo was sent from Pamela Carrol, Director of Human Resources, to Dr. Michael McFarland, the Superintendent, describing the details of the April 29 meeting and the results of the investigation. (Pl.'s Compl. 3). The memo stated that Woods and the student denied any inappropriate relationship. (Pl.'s Compl. Ex. 6). Nonetheless, it was revealed that three text messages from Woods' phone number were found on the student's cell phone, one of which stated "find a way to call me." (*Id.*). It was sent the day before the April 29 meeting wherein Woods denied any recent communication with the student. (*Id.*). Ultimately, Carrol found the allegations of an inappropriate relationship "unsubstantiated", but specifically mentioned Woods' misrepresentation regarding recent contact with the student "gives the district cause for concern." (*Id.*). The memo ended by recommending Woods remain on administrative leave until her contract

---

[2]This facts in this opinion are drawn from exhibits attached to Woods' Complaint. "Exhibits attached to the complaint . . . are part of the complaint 'for all purposes.' Thus it is not error to consider the exhibits to be part of the complaint for purposes of a Rule 12(b)(6) motion." *U.S. Ex. rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 375 (5th Cir. 2004).

ended. (*Id.*).

Although her resignation was scheduled to become effective on June 9, 2010, Woods alleges that, on or around June 3rd, Carrol informed her that she would not be allowed to return to work. (Pl.'s Resp. 6). On August 16, 2010, Woods filed a complaint with the EEOC alleging that her interaction with Carrol was a termination based on sex discrimination. (Pl.'s Compl. Ex. 2). The complaint also claimed that she had been repeatedly harassed by a male coworker as a result of sex discrimination. (*Id.*). The EEOC sent Woods a right-to-sue letter on August 16, 2010. (Pl.'s Compl. Ex. 3). It gave Woods ninety days from the time of receipt to file a lawsuit based on these claims or she would lose her "right to sue based on this charge." (*Id.*).

On September 27, 2010, the Texas Education Agency ("TEA") notified Woods that it had been informed of the alleged inappropriate relationship and it intended to investigate. (Pl.'s Compl. Ex. 8). At this time, the TEA placed a notice of the investigation on Woods' teaching certification, which Woods alleges prevented her from obtaining a teaching job for the 2010-2011 school year. (Pl.'s Compl. 3-4). The TEA eventually closed the case without taking any further action. (Pl.'s Compl. Ex. 13).

On October 10, 2010, Woods filed another EEOC complaint. (Pl.'s Compl. Ex. 9). This complaint alleged "a previous internal complaint to my employer that had been proven unsubstantiated was forwarded to the Texas State Board and Texas Education Agency . . . in retaliation for having filed an EEO complaint." (*Id.*). On January 18, 2011, the EEOC sent Woods another right-to-sue letter with the same ninety day statute of limitations. (Pl.'s Compl. Ex. 10).

Woods filed her Original Complaint and Jury Demand (doc. 2) and commenced this lawsuit on April 15, 2011. The Complaint addresses both Woods' claims of sexual discrimination and

retaliation. (*See generally* Pl.'s Comp.). On May 3, 2011, LISD filed the insant Motion to Dismiss and Brief in Support (doc. 6), seeking the dismissal of both her sexual discrimination and retaliation claims. Woods responded (doc. 12) on May 23, 2011, and LISD filed a Reply (doc. 13) two days later. Having considered all of the issues, the Court now turns to the merits of its decision.

## II.

### LEGAL STANDARDS

Under the Federal Rules of Civil Procedure, a complaint must contain "a short, plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff may support his claim for relief with any set of facts consistent with the allegations in the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). Rule 12(b)(6) authorizes dismissal of a complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In analyzing a Rule 12(b)(6) motion, the Court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). Such a motion should only be granted when the complaint does not include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement', but asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, to survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint that offers "labels and

conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss. *Iqbal*, 129 S. Ct. at 1949. A Rule 12(b)(6) motion to dismiss "is viewed with disfavor and is rarely granted." *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009). The Court's review is limited to the allegations in the complaint and to those documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the claim. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

## III.

## ANALYSIS

LISD moves to dismiss both Woods' claims of sex discrimination and her claim of retaliation under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Def.'s Mot. Dismiss 4-7). The Court first examines LISD's arguments in favor of dismissing Woods' sex discrimination claim. The Court then turns its analysis to LISD's arguments concerning dismissal of Woods' claim of retaliation.

A. *Sex Discrimination*

Woods alleges that "Defendant's sole purpose for discharging Plaintiff was because of her sex, female . . . ." (Pl.'s Compl. 5). She also alleges that "[she] was verbally sexually harassed by a male co-worker from approximately February 9, 2010 until April 29, 2010." (Pl.'s Compl. Ex. 2). LISD moves to dismiss these claims on several grounds: the claims are not adequately pleaded, they are time-barred, and Woods voluntarily resigned rather than being discharged. (Def.'s Mot. Dismiss 4-7). Woods disputes each of these contentions. (Pl.'s Resp. 3-5). The Court finds that dismissal of Woods' sex discrimination claims is proper on the basis of the claims being time-barred, and thus, the Court does not separately consider the other bases for dismissal.

A plaintiff may only bring a Title VII claim in federal court after she has exhausted her administrative remedies before the EEOC. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002). This means that before filing a suit, a plaintiff must "file[ ] a timely charge with the EEOC and receive[ ] a statutory notice of right to sue." *Id.* (citing *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788-89 (5th Cir. 1996)). A plaintiff suing under Title VII must bring her claims within ninety days of receipt of a right-to-sue letter from the EEOC. *Berry v. CIGNA/RSI-CIGNA*, 935 F.2d 1188, 1191 (5th Cir. 1992) (citing 42. U.S.C. § 2000e 5 (f)). The requirement that a plaintiff must bring suit within ninety days of receipt of the right-to-sue notice is "strictly construed", and claims that do not comply with that requirement should be dismissed. *Taylor*, 296 F.3d at 379.

The EEOC sent Woods her initial right-to-sue notice for her sex discrimination claims on August 16, 2010. (Pl.'s Compl. Ex. 2). She filed this suit against LISD on April 15, 2011. (Pl.'s Comp. 1). Ninety-seven days[3] from the time Woods received the notice would have been November 20, 2010; the claims were clearly filed past the ninety day limit. Nonetheless, Woods attempts to bring her sex discrimination claims under the more recent right-to-sue notice she received for her claim of retaliation on January 18, 2011. (*See generally* Pl.'s Resp.). While LISD concedes this suit was timely filed in the context of the retaliation claim,[4] it argues Woods' sex discrimination claims are time-barred under the initial right-to-sue letter and she cannot bring them under the new notice. (Def.'s Reply 1-2). Woods disputes this contention, but does not offer

---

[3] When the date of receipt of the right-to-sue notice is unclear, an extra seven days are added to the calculation to account for the time of sending to receipt. *Stokes v. Dolgencorp, Inc.*, 367 F. App'x 545, 547-48 (5th Cir. 2010).

[4] Woods claims she received notice shortly after January 18, 2011. (Pl.'s Compl. 4). Ninety-seven days from receipt would have been April 25, 2011.

supporting case law or reasoning. (*See generally* Pl.'s Resp.). LISD suggests that Woods may be invoking the continuing violations doctrine.[5] (Def.'s Reply 2). Out of an abundance of caution, and because that doctrine appears to be the only basis upon which Woods' sex discrimination claims can possibly survive dismissal, the Court finds analysis of the issue to be proper.

The continuing violations doctrine is an equitable tool that allows the statute of limitations for filing an EEOC complaint to be tolled in certain circumstances. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116-117 (2002). The continuing violations doctrine does not apply to "discrete" acts of discrimination. *See id.* at 113. "A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'" *Id.* at 110. "[D]iscrete discriminatory acts are not actionable if time[-]barred, even when they are *related* to acts alleged in timely filed charges." *Id.* at 113 (emphasis added). "Discrete acts such as termination . . . are easy to identify". *Id.* at 114. In comparison, the continuing violations doctrine is intended to make actionable those claims which "occur[ ] over a series of days or perhaps years and, in direct contrast to discrete acts . . . may not be actionable on [their] own." *Id.* at 115. Woods alleges both a termination based on sex discrimination and continuing sexual harassment by a male co-worker. (Pl.'s Compl. Ex. 2).

Termination falls squarely into the definition of a discrete act, and as such, the continuing violations doctrine does not apply. *See id.* at 114. As to her claims concerning the continuing sexual harassment by a male co-worker, Woods alleges that the co-worker was a "hall-monitor". (Pl.'s Compl. 5). According to Woods' Complaint, the only people involved in the investigation of Woods

---

[5]Woods does not directly address the continuing violations doctrine in either her Complaint or Response. (*See generally* Pl.'s Compl.; Pl.'s Resp.). However, as best the Court can tell, her argument suggests its use.

were the Principal, the Police Chief, and Ms. Carrol. (Pl.'s Compl. Ex. 6). Woods simply does not tie the hall-monitor to the investigation in the least, and it is therefore implausible that any harassment committed by the hall-monitor is sufficiently related to the alleged act of retaliation. It is not plausible that the hall-monitor could forward information to the TEA regarding an investigation about which he was unaware. Accordingly, the acts are disconnected and not part of one sustained act of discrimination, and neither of Woods' sex discrimination claims falls under the continuing violations doctrine.

Moreover, the Court notes that even if Woods' sex discrimination claims did satisfy the continuing violations doctrine, that doctrine has never been used in the context of the 90 day limitation invoked by LISD, rather it has only been used to toll the 180 or 300 day limitation between the date of a discriminatory act's occurrence and the filing of a complaint with the EEOC. *See, e.g., Nat'l R.R.*, 536 U.S. at 116-117. Although the Fifth Circuit has yet to address this question, other circuits unequivocally find that the continuing violations doctrine does not apply to the ninety day limit. *See Copeland v. Rosen*, 25 F. App'x 17, 19 (2d Cir. 2001); *Austion v. City of Clarksville*, 244 F. App'x 639, 648 (6th Cir. 2007) (quoting *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 461 (6th Cir. 2001)); *Brown v. Hartshorne Pub. Sch. Dist. No. 1*, 926 F.2d 959, 962 (10th Cir. 1991) ("[T]he continuing violation theory does not eliminate the requirement that a plaintiff file a judicial action within ninety days of receipt of notice of the right to sue."). The purpose of the continuing violations doctrine is to ensure claims that are "composed of a series of separate acts that collectively constitute one 'unlawful employment practice'" are actionable. *See Nat'l R.R.*, 536 U.S. at 117. Here, the EEOC's right-to-sue letter informed Woods that her claims were actionable. (Pl.'s Compl. Ex. 2). The problem is that she failed to act. Accordingly, the Court finds no reason to extend the

doctrine to accommodate this circumstance.

Thus, because Woods failed to timely file suit regarding her sex discrimination claims, and the shelter of the continuing violations doctrine is unavailable, the claims are **DISMISSED**. Furthermore, such dismissal is **with prejudice** because amendment would be futile. *See McGowan v. Faulkner Concrete Pipe Co.*, 659 F.2d 554, 556 (5th Cir. 1981) ("Where further litigation on the claim will be time-barred, a dismissal without prejudice is no less severe a sanction than a dismissal with prejudice, and the same standard of review is used.").

B.    *Retaliation for Filing an EEOC Complaint*

Woods alleges that news of her alleged inappropriate relationship with a student was given to the TEA by LISD in retaliation for filing her initial EEOC complaint. (Pl.'s Resp. 4-5; Pl.'s Compl. Ex. 6). LISD contends that Woods has no evidence that LISD forwarded any information to the TEA. (Def.'s Mot. Dismiss 5). Moreover, LISD argues even if it did inform the TEA, it's because it is required to by Texas law. (*Id.*). Woods concedes that she does not have direct evidence that LISD is responsible for sending the TEA the information, but claims "discovery will probably reveal that it was the superintendent of LISD." (Pl.'s Resp. 5). The Court finds that dismissal is unwarranted with regards to Woods' retaliation claim.

Woods' retaliation claim must only "rise above a speculative level." *Twombly*, 550 U.S. at 555. Viewing the facts in the light most favorable to Woods, it is plausible that LISD forwarded potentially harmful information to the TEA. In fact, LISD itself admits that the Texas Education Code requires the superintendent to notify the State Board for Educator Certification[6] of any

---

[6]The State Board for Educator Certification is a division of the TEA. *See TPl.'s Compl. Ex. Educ. Agency v. Leeper*, 893 S.W.2d 432, 435 n. 6 (TPl.'s Compl. Ex. 1994).

misconduct. (Def.'s Mot. Dismiss 5). LISD alternatively argues that because the superintendent is required to notify the State Board of Educator Certification, the superintendent could not have acted with a retaliatory motive in sending the TEA the information. (*Id.*). However, the Texas Education Code only requires the transmittal of information when "the superintendent has *reasonable* cause" to believe an educator abused or otherwise committed an unlawful act with a student. Tex. Educ. Code Ann. § 21.006 (amended by 2011 Tex. Sess. Law Serv. Ch. 761) (emphasis added). A question of reasonableness is axiomatically a fact question. Thus, the Court finds that if the superintendent was responsible for forwarding the information to the TEA, the question of whether he acted reasonably or in retaliation is a question better left for summary judgment or a jury.

Because Woods' retaliation claim is adequately pleaded, the Court **DENIES** the motion to dismiss with respect to that claim.

## IV.

## CONCLUSION

For the foregoing reasons, LISD's Motion to Dismiss is **GRANTED** to the extent it seeks dismissal of Woods' sex discrimination claims as time-barred and **DENIED** to the extent it seeks dismissal of Woods' retaliation claim. Accordingly, Woods' sex discrimination claims are hereby **DISMISSED with prejudice**.

SO ORDERED.

DATED July 6, 2011

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE